No. 14-15603

# In The United States Court Of Appeals For The Ninth Circuit

C.M.D., et al.,

Plaintiffs-Appellants,

v.

FACEBOOK, INC.,

Defendant-Appellee.

On Appeal from the Northern District of California
Case No. 3:11-cv-01726-RS
The Honorable Richard Seeborg, District Judge

## APPELLANTS' BRIEF

Aaron M. Zigler
**KOREIN TILLERY LLC**
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, Missouri 63101-1625
Telephone: (314) 241-4844
Facsimile: (314) 241-3525
*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... i

STATEMENT OF JURISDICTION .......................................................... 1

ISSUES PRESENTED ............................................................................... 2

STATUTORY FRAMEWORK ................................................................... 3

STATEMENT OF THE CASE .................................................................. 4

SUMMARY OF ARGUMENT ................................................................... 7

STANDARD OF REVIEW ......................................................................... 9

ARGUMENT .............................................................................................. 10

   I.   THE PLAIN LANGUAGE OF § 6701(a) PROHIBITS A MINOR FROM TRANSFERRING THE LEGAL RIGHT TO USE HER NAME OR LIKENESS. .................................................................... 12

     A. Because The Language of § 6701(a) Is Clear, The District Court's Attempt to "Construe" It Was Error. .................................................. 15

     B.   The District Court Also Violated A Host of Well-Established Maxims of Statutory Construction. .................................................. 19

   II.   SECTION 6701(c) PROHIBITS A MINOR FROM MAKING A CONTRACT RELATING TO THE FUTURE USE OF HIS NAME OR LIKENESS ........................................................................................ 28

   III.   SECTION 6710 ALLOWS A MINOR TO VOID A CONTRACT WITHOUT RETURNING ANY BENEFIT .......................................... 33

CONCLUSION ........................................................................................... 35

STATEMENT OF RELATED CASES ..................................................... 38

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7) ......... 39

PROOF OF SERVICE ............................................................................... 40

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bass v. Cnty. of Butte,*
  458 F.3d 978 (9th Cir. 2006)............................................................ 10

*Berg v. Traylor,*
  148 Cal. App. 4th 809 (2007) ........................................................... 34

*Bisno v. Kahn,*
  225 Cal. App. 4th 1087 (2014) .................................................... 20, 21

*Blood v. Light,*
  38 Cal. 649 (1869) ........................................................................... 12

*Brewster v. Hartley,*
  37 Cal. 15 (1869) ............................................................................. 29

*Burnand v. Irigoyen,*
  30 Cal. 2d 861 (1947) (en banc) ............................................. 9, 34, 35

*Cabrera v. City of Huntington Park,*
  159 F.3d 374 (9th Cir. 1998)............................................................ 35

*California Redevelopment Assn. v. Matosantos,*
  53 Cal. 4th 231 (2011)..................................................................... 19

*Cedars of Lebanon Hosp. v. Los Angeles Cnty.,*
  35 Cal. 2d 729 (1950) ...................................................................... 21

*Celli v. Sports Car Club of Am., Inc.,*
  29 Cal. App. 3d 511 (1972)...................................................... 9, 34, 35

*Cortez v. Purolator Air Filtration Prods. Co.,*
  23 Cal. 4th 163 (2000)................................................................ 11, 15

*Curiac v. Packard,*
  29 Cal. 194 (1865) ........................................................................... 12

*In re D.B.*,
58 Cal. 4th 941 (2014) ........................................................................ 11

*In re Daniel G.*,
120 Cal. App. 4th 824 (2004) ............................................................. 29

*Davis v. Harris*,
61 Cal. App. 4th 507 (1998) ................................................... 11, 12, 15

*Diamond Multimedia Sys., Inc. v. Superior Court*,
19 Cal. 4th 1036 (1999) ...................................................................... 15

*Ennabe v. Manosa*,
58 Cal. 4th 697 (2014) ........................................................................ 10

*In re Estate of Earley*,
173 Cal. App. 4th 369 (2009) ........................................................ 16, 17

*Flittner v. Equitable Life Assur. Soc. of U.S.*,
30 Cal. App. 209 (1916) ...................................................................... 24

*Grupa v. Chapman*,
153 N.W. 929 (S.D. 1915) ................................................................... 24

*Hakes Inv. Co. v. Lyons*,
166 Cal. 557 (1913) ................................................................. 5, 16, 27

*Hart v. Burnett*,
15 Cal. 530 (1860) .............................................................................. 12

*Khajavi v. Feather River Anesthesia Med. Grp.*,
84 Cal. App. 4th 32 (2000) ................................................................. 16

*Leroy T. v. Workmen's Comp. Appeals Bd.*,
12 Cal. 3d 434 (1974) ......................................................................... 22

*People ex rel. Lungren v. Superior Court*,
14 Cal. 4th 294 (1996) ........................................................................ 26

*Morgan v. Morgan*,
220 Cal. App. 2d 665 (1963) ................................................... 27, 30, 31

*Paulson v. City of San Diego*,
   294 F.3d 1124 (9th Cir. 2002) (en banc) ............................................ 10

*Pearson v. Superior Court*,
   202 Cal. App. 4th 1333 (2012) ...................................................... 20, 26

*People v. Gray*,
   58 Cal. 4th 901 (2014) ........................................................................ 11

*People v. Howard*,
   31 Cal. App. 358 (1916) ...................................................................... 15

*People v. Nelson*,
   200 Cal. App. 4th 1083 (2011) ........................................................... 12

*People v. Rodriguez*,
   55 Cal. 4th 1125 (2012) ...................................................................... 15

*Pineda v. Williams-Sonoma Stores, Inc.*,
   51 Cal. 4th 524 (2011) ........................................................................ 26

*Pollock v. Indus. Acc. Comm'n*,
   5 Cal. 2d 205 (1936) ........................................................................... 24

*Quarry v. Doe I*,
   53 Cal. 4th 945 (2012) ........................................................................ 21

*Ridley v. Young*,
   64 Cal. App. 2d 503 (1944) ................................................................ 28

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ............................................................. 30

*Silvas v. E\*Trade Mortgage Corp.*,
   514 F.3d 1001 (9th Cir. 2008) ............................................................ 10

*Sisco v. Cosgrove*,
   51 Cal. App. 4th 1302 (1996) ........................................................ 31, 32

*Souza v. Lauppe*,
   59 Cal. App. 4th 865 (1997) ............................................................... 17

## Statutes

Cal. Fam. Code § 6701...........................................4, 7, 8, 12, 28, 30, 32, 33

Cal. Fam. Code § 6710.............................................................. 5, 9, 33, 34

## Other Authorities

*BLACK'S LAW DICTIONARY* (9th ed. 2009) ..................................... 13, 14, 15

*BOUVIER'S LAW DICTIONARY* (12th ed. 1868)......................... 12, 13, 29, 30

J. THOMAS MCCARTHY, *Rights of Publicity and Privacy* (2d ed. 2011).....4

Jonathan Todres, *Maturity*, 48 HOUS. L. REV. 1107 (2012) ...................25

*SUTHERLAND STATUTORY CONSTRUCTION* (7th ed.)..................... 12, 21, 22

## STATEMENT OF JURISDICTION

The Northern District of California had jurisdiction over the subject matter of this action under 28 U.S.C § 1332(d) because there is minimal diversity of citizenship among the parties, there are more than one hundred members of the proposed class/subclasses, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. C.M.D. is a citizen of Illinois. (Second Am. Compl. ECF No. 156 at ¶ 2). Facebook is a Delaware corporation with its principle place of business in California. (*Id.* ¶ 9).

This Court has appellate jurisdiction under 28 U.S.C. § 1291, because the district court rendered a final decision disposing of all claims before it when it granted Facebook's motion to dismiss on March 26, 2014. (Order, ECF No. 177, ER 5). The order granting the motion to dismiss is a final decision within the meaning of 28 U.S.C. § 1291. Appellants filed a timely notice of appeal on March 27, 2013 (ECF No. 179, ER 1), less than 30 days following the entry of the order granting the motion to dismiss.

## ISSUES PRESENTED

1. Whether Facebook's purported user agreement providing "[y]ou give us permission to use your name and profile picture" violates California Family Code § 6701's prohibition of minors giving a "delegation of power" or making a "contract relating to any personal property not in the[ir] immediate possession or control?"

2. Whether the filing of a lawsuit seeking a declaration that Facebook's purported user agreement is void while continuing to enjoy the benefits of the agreement is an unequivocal intent to repudiate the agreement under California Family Code § 6710?

# STATUTORY FRAMEWORK

Cal. Fam. Code § 6700. Authority to contract

Except as provided in Section 6701, a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance under Chapter 2 (commencing with Section 6710), and subject to Part 1 (commencing with Section 300) of Division 3 (validity of marriage).

Cal. Fam. Code § 6701. Restrictions on authority to contract

A minor cannot do any of the following:

(a) Give a delegation of power.

(b) Make a contract relating to real property or any interest therein.

(c) Make a contract relating to any personal property not in the immediate possession or control of the minor.

Cal. Fam. Code § 6710. Right of disaffirmance

Except as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards or, in case of the minor's death within that period, by the minor's heirs or personal representative.

## STATEMENT OF THE CASE

Plaintiffs challenge Facebook's use of the names and pictures of children to advertise goods and services. The unauthorized use of personal identity in commercial advertising has been characterized as the "clearest case" of infringement of the right of publicity. 2 J. THOMAS MCCARTHY, *Rights of Publicity and Privacy* § 7:8 (2d ed. 2011). The "right of publicity" is an intellectual property right defined as "the inherent right of every human being to control the commercial use of his or her identity," and infringement of this right is a commercial tort of unfair competition. 1 MCCARTHY, *supra*, § 1:3.

Facebook contends that its users agreed to Facebook's use of their identities because the non-negotiable terms of Facebook's online Statement of Rights and Responsibilities ("SRR") provide:

> (1) ...You give us permission to use your name and profile picture in connection with that content, subject to the limits you place … (3) You understand that we may not always identify paid services and communications as such.

(SRR ¶ 10, ECF No. 161-2, ER 37). California law, however, forbids minors from entering into contracts that purport to "give a delegation of power" or that relate to "any personal property not in the immediate possession or control of a minor." Cal. Fam. Code § 6701. Such contracts

4

are "absolutely void, with no necessity to disaffirm [it] to avoid [its] apparent effect." *Hakes Inv. Co. v. Lyons*, 166 Cal. 557, 560 (1913). California also permits minors to disaffirm most other contracts, subject to a few exceptions not applicable here. Cal. Fam. Code § 6710.

Plaintiffs are minors who sought a declaratory judgment decreeing Facebook's putative contracts with them are void. (Second Am. Compl., ECF No. 156 at ¶¶ 58-74). Plaintiffs (who are Illinois residents) also sought damages under Illinois's right of publicity statute. (*Id.* at ¶¶ 86-117). Finally, Plaintiffs also sought a declaration that their damage claims were not preempted by the Children's Online Privacy Protection Act, 15 U.S.C. 6501–6506 (2006). (*Id.* at ¶¶ 75-85).

Plaintiffs filed this action in the Southern District of Illinois. (ECF No. 1). That court transferred the case to the Northern District of California pursuant to § 1404(a), in part based on the venue provision of Facebook's SRR. (ECF No. 93). Below, Facebook argued the transfer order was "law of the case" and conclusively determined the validity of the SRR in its favor and moved to dismiss on that ground, among others. (ECF No. 159).

The district court dismissed Plaintiffs' Second Amended Complaint

on March 26, 2014. (ECF No. 177, ER 5). The court did not address Facebook's law of the case argument, but it did reject Facebook's subject matter jurisdiction challenge that Plaintiffs' have not sustained an Article III injury in fact. On the merits, the court held that California's ban on contracts with minors that purport to "give a delegation of power" or that relate to "any personal property not in the immediate possession or control of the minor" was inapplicable to Facebook's SRR and that Plaintiffs had not adequately exercised their right to disaffirm their contracts with Facebook under § 6710.

The court interpreted § 6701(a)'s ban on contracts that "give a delegation of power" to be limited to contracts appointing an agent. (*Id.* at 6). The district court also held that Facebook's SRR was not void under § 6701(c) as "a contract relating to personal property not in the immediate possession or control of the minor." Narrowly construing the statute, the court held that because § 6701(c) "is directed at *tangible* property …., it only renders void certain contracts relating to such property." (*Id.*).

Last, the district court dismissed Plaintiffs' alternative claim (that Facebook's SRR is voidable under Family Code § 6710), while simulta-

neously acknowledging that § 6710 "almost certainly would allow plaintiffs to disaffirm the SRRs." (*Id.* at 7). The court reasoned that Plaintiffs "have never plainly expressed an intent to … [disaffirm the SRR], and they do not dispute that they continued to use their Facebook accounts long after this action was filed." (*Id.*).

The district court dismissed Plaintiffs' claim for declaratory relief (Count I) and, reasoning that Plaintiffs' other claims "are dependent on a conclusion that the SRRs …. are invalid," the court dismissed Counts II, III & IV as well. (*Id.* at 8). This appeal followed.

## SUMMARY OF ARGUMENT

I.  Section 6701(a) of California's Family Code provides that "[a] minor cannot … [g]ive a delegation of power." The straightforward meaning of that language is that a minor cannot transfer to another the legal right or authorization to do something. It therefore follows that a minor cannot grant Facebook "permission to use [the minor's] name and profile picture in connection with" "commercial, sponsored, or related content." Facebook's SRR which purports to give such a delegation of power is therefore void.

Because § 6701(a) is clear and unambiguous, the district court's at-

tempt to "construe" it was improper. Moreover, the court gave § 6701(a)'s ban on a minor's "delegation of power" an extraordinarily narrow construction, reducing its plain meaning down to only one permissible meaning of that language: an appointment of an agent. Not only was the district court's interpretation unduly narrow, adopting a narrow construction was error because § 6701 is a remedial statute intended to protect minors. The district court's "narrow construction" of the statute thus ran afoul of the rule requiring remedial statutes to be construed broadly.

II. Section 6701(c) (also a remedial statute that is to be construed broadly to effectuate its purpose of protecting minors) provides that "[a] minor cannot … [m]ake a contract relating to any personal property not in the immediate possession or control of the minor." The statute was intended to allow minors to enter into contracts only for tangible personal property in their immediate control by banning all other contracts relating to personal property. The district court correctly recognized that the "immediate possession or control" language refers to tangible property, but then inexplicably and erroneously held that § 6701(c)'s broad ban does not apply to intangible property rights.

III. California's Family Code allows minors to void most contracts they enter into, and Facebook's SRR is no exception. Section 6710 provides that "a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards …." Under California law, the filing of a lawsuit is sufficient to disaffirm a contract. *Celli v. Sports Car Club of Am., Inc.*, 29 Cal. App. 3d 511, 517 (1972). In addition, a minor can retain the benefits of a contract he disaffirms. *Burnand v. Irigoyen*, 30 Cal. 2d 861, 865-66 (1947) (en banc). This is why California courts caution that those who contract with minors do so at their own peril. *Id.*

The district court itself recognized that § 6710 "would almost certainly allow plaintiffs to disaffirm the SRRs," (Order at 7, ER 11), but the court nevertheless held that Plaintiffs "have never plainly expressed an intent to [disaffirm the SRR], and they do not dispute that they continued to use their Facebook accounts long after this action was filed." *Id.* In light of cases like *Celli* and *Burnand*, the district court's ruling is both perplexing and erroneous. This Court should reverse.

## STANDARD OF REVIEW

A dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is

9

reviewed *de novo. Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1003-04 (9th Cir. 2008). So is a "district court's interpretation of state law." *Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002) (en banc) (citing *Churchill v. F/V Fjord,* 739 F.2d 1395, 1398 (9th Cir. 1984) (en banc)).

## ARGUMENT

"When interpreting state law, [federal courts] are bound to follow the decisions of the state's highest court." *Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002) (en banc). Thus, as this Court has recognized, "we must follow the state's rules of statutory interpretation." *Bass v. Cnty. of Butte*, 458 F.3d 978, 981 (9th Cir. 2006).

California's approach is similar to that of most other jurisdictions. "As with all questions of statutory interpretation, we attempt to discern the Legislature's intent, 'being careful to give the statute's words their plain, commonsense meaning. If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary.' " *Ennabe v. Manosa*, 58 Cal. 4th 697, 713 (2014) (quoting *Ste. Marie v. Riverside County Regional Park & Open–Space Dist.*, 46 Cal. 4th 282, 288 (2009)). "If no

ambiguity appears in the statutory language, we presume that the Legislature meant what it said, and the plain meaning of the statute controls." *People v. Gray*, 58 Cal. 4th 901, 906 (2014). "When statutory language is unambiguous, we must follow its plain meaning 'whatever may be thought of the wisdom, expediency, or policy of the act, *even if it appears probable that a different object was in the mind of the legislature.*'" *In re D.B.*, 58 Cal. 4th 941, 948 (2014) (quoting *People v. Weidert*, 39 Cal. 3d 836, 843 (1985) (emphasis added).

" 'In examining the [statutory] language, the courts should give to the words of the statute their ordinary, everyday meaning ... unless, of course, the statute itself specifically defines those words to give them a special meaning ....' " *Davis v. Harris*, 61 Cal. App. 4th 507, 511 (1998) (alterations in original) (quoting *Halbert's Lumber Inc. v. Lucky Stores, Inc.*, 6 Cal. App. 4th 1233, 1238 (1992)). When a statute's ordinary, everyday language is clear, " '[t]here is nothing to "interpret" or "construe," *id.*, so judicial construction is neither necessary nor proper.' " *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179 (2000) (citing *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1047 (1999) ("If [the statutory language] is clear and unambiguous our

inquiry ends. There is no need for judicial construction and a court may not indulge in it.")). When it's clear, " 'the language controls.' " *Davis*, 61 Cal. App. 4th at 511 (quoting *Halbert's Lumber*).

"An ambiguity exists when words in a statute 'are capable of being construed in two different ways by reasonably well informed people.' " *People v. Nelson*, 200 Cal. App. 4th 1083, 1098 (2011) (quoting *People v. Bostick*, 46 Cal. App. 4th 287, 295 (Kline, P.J., concurring)); *see also* 2A SUTHERLAND STATUTORY CONSTRUCTION § 45:2 (7th ed.) ("ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses").

## I. THE PLAIN LANGUAGE OF § 6701(a) PROHIBITS A MINOR FROM TRANSFERRING THE LEGAL RIGHT TO USE HER NAME OR LIKENESS.

The language of § 6701(a) is clear and unambiguous: "[a] minor cannot … Give a delegation of power." Those eight simple words had the same meaning when the statute was enacted in 1872. Then, as now, "delegation" meant "[t]he transfer of authority from one or more persons to one or more others." 1 BOUVIER'S LAW DICTIONARY[1] 450 (12th ed.

---

[1] The California Supreme Court frequently cited BOUVIER'S LAW DICTIONARY as authoritative, prior to the enactment of § 6701(a).

1868); *cf. BLACK'S LAW DICTIONARY* (9th ed. 2009) ("delegation" is "[t]he act of entrusting another with authority or empowering another to act as an agent or representative"). "Power" meant "[t]he right, ability or faculty to do something. Technically, an authority by which one person enables another to do some act for him." 2 *BOUVIER'S* at 355. It still does. *BLACK'S LAW DICTIONARY* ("power" is "1. The ability to act or not act; esp., a person's capacity for acting in such a manner as to control someone else's responses. … 3. The legal right or authorization to act or not act").

The plain, ordinary, everyday language of section 6701(a) thus means — and always has — that a minor cannot transfer to another the legal right or authorization to do something. It necessarily follows that, if a minor cannot transfer the legal right to do something to another, then a minor cannot grant (*i.e.*, transfer to[2]) Facebook "permission [*i.e.*,

---

*See, e.g., Hart v. Burnett*, 15 Cal. 530, 548 (1860); *Curiac v. Packard*, 29 Cal. 194, 198 (1865); *Blood v. Light*, 38 Cal. 649, 658 (1869).

[2] *Cf. BLACK'S LAW DICTIONARY* (9th ed. 2009) (excerpts from entries for "grant" & "transfer") (**grant**, vb. (13c) 1. To give or confer (something), with or without compensation <the parents granted the car to their daughter on her 16th birthday>. 2. To formally transfer (real property) by deed or other writing < the Lewisons granted the townhouse to the Bufords>. [Cases: Deeds 3.] 3. To permit or agree to <the press secretary granted the reporter access to the Oval Office>; **transfer**, vb. (14c)

13

the legal right[3]] to use [the minor's] name and profile picture in connection with" "commercial, sponsored, or related content," which is precisely the "delegation of power" that Facebook purports to extract from children.

In the face of this plain statutory language, Facebook argued in the district court — and prevailed on the district court to hold — that "the proscription of 'delegation[s] of power' only prevents minors from appointing or acting through an agent." (ECF No. 167 at 12[4]; *see also* Order at 6, ER 10) ("The consent Facebook users give for use of their names and profile pictures in certain ways on the site simply is not tan-

---

1. To convey or remove from one place or one person to another; to pass or hand over from one to another, esp. to change over the possession or control of. 2. To sell or give.).

[3] **permission.** (15c) **1.** The act of permitting. **2.** A license or liberty to do something; authorization. *BLACK'S LAW DICTIONARY* (9th ed. 2009), permission. *See also, People v. Howard*, 31 Cal. App. 358, 367 (1916) (" 'Permission' to do an act is 'authority' to do it.")

[4] In the district court, Facebook candidly argued that "[c]ases construing § 6701(a) and its predecessor statute, Civil Code § 33, demonstrate that the proscription against a minor's contractual 'delegation of power' *relates to a minor's ability to appoint an agent.*" (ECF No. 159 at 24) (emphasis added). On appeal, Facebook appears to shy away from that construct: "Every case that has been cited in this litigation construed Section 6701(a) or its predecessor statute to apply only in the context of a relationship in which one party gives a second party *legal authority to act on the first party's behalf.*" (Facebook's Opp'n to Mtn. to Certify Questions to Cal. S. Ct., CA9 ECF No. 11 at 14) (Facebook's emphasis).

tamount to appointing Facebook as an agent for users, or to delegating to it any power to be exercised on behalf of those users."). There are a number of problems with Facebook's and the district court's construction of § 6701(a).

## A. Because The Language of § 6701(a) Is Clear, The District Court's Attempt to "Construe" It Was Error.

First, because the statute's ordinary, everyday language is unmistakably clear, there was nothing for the district court to "interpret" or "construe"; "judicial construction [was] neither necessary nor proper," and the "court [should] not [have] indulge[d] in it." *Davis*, 61 Cal. App. 4th at 511; *Cortez*, 23 Cal. 4th at 179; *Diamond Multimedia Sys.*, 19 Cal.4th at 1047.

While California courts will certainly "reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results," *People v. Rodriguez*, 55 Cal. 4th 1125, 1131 (2012) (quoting *Simpson Strong–Tie Co., Inc. v. Gore* 49 Cal. 4th 12, 27 (2010)), neither Facebook nor the district court ever identified any respect in which a literal construction of § 6701(a) was "contrary" to the legislative intent or would lead to an absurd result. Although the General Assembly's motivation for enacting the statute was to prevent

15

"an infant … [from] execut[ing] contracts through an agent having only a delegated authority executed by the infant," *Hakes Inv. Co. v. Lyons*, 166 Cal. 557, 560 (1913), the language of § 6701(a) is at most *broader* than (not *contrary* to) that legislative motivation.

The district court improperly substituted the policy concern that animated the General Assembly's original enactment of § 6701(a) (*i.e.*, the ability of a minor to appoint an agent) for the actual, broader words the legislature used, prohibiting minors from "giv[ing] a delegation of power."

> However, the specific impetus for a bill does not limit its scope when its text speaks to its subject more broadly, as here: "[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."

*Khajavi v. Feather River Anesthesia Med. Grp.*, 84 Cal. App. 4th 32, 51 (2000) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998)); *accord In re Estate of Earley*, 173 Cal. App. 4th 369, 376 (2009). "Indeed, when the Legislature has made a deliberate choice by selecting broad and unambiguous statutory language, 'it is unimportant that the particular application may not have been contemplated.'" *Id.*

(quoting *Barr v. United States*, 324 U.S. 83, 90 (1945)).

"Even if … the Legislature did not have such an application in mind when it enacted [the statute], a different construction is not required because our interpretation of the statute is compelled by the plain meaning of its words, does not frustrate its apparent purpose, and does not result in absurd consequences."*Souza v. Lauppe*, 59 Cal. App. 4th 865, 874 (1997). "The Legislature may act 'to address a specific problem but ultimately settle[] on a broader remedy.... "[T]hat a statute can be applied in situations not expressly anticipated by [the Legislature] does not demonstrate ambiguity. It demonstrates breadth." ' " *In re Estate of Earley*, 173 Cal. App. 4th at 376 (quoting *New Hampshire Motor Transport Ass'n v. Rowe*, 448 F.3d 66, 77 (1st Cir. 2006) (quoting *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998)).

Facebook's current SRR provides:

> (1) You can use your privacy settings to limit how your name and profile may be associated with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. You give us permission to use your name and profile picture in connection with that content, subject to the limits you place . . . (3) You understand

that we may not always identify paid services and
communications as such.[5]

(SRR ¶ 10, ECF No. 161-2, ER 37). In other words, Facebook's SRR

purports to have users delegate to Facebook the power to place their

name and likeness into unidentified, paid commercial advertisements

that Facebook "serves or enhances" on its own behalf. As Facebook ad-

mitted in its motion to dismiss, this purported grant of authority would

give Facebook free reign to enable this content without any further con-

sent or notice to the user. Mot. at 3, ECF 159 ("Later, and again subject

to the User's privacy settings, the User's Friends may again see a re-

publication of the same story (that he or she "Likes" a Facebook Page)

sometimes alongside [Facebook's term for *in*] a related ad for that

_____

[5] This language represents an evolution from Facebook's Terms of Use
that were in effect as of September 23, 2008, which required users to
grant "to the Company an irrevocable, perpetual, non-exclusive, trans-
ferable, fully paid, worldwide license (with the right to sublicense) to
use, copy, publicly perform, publicly display, reformat, translate, ex-
cerpt (in whole or in part) and distribute such User Content for any
purpose, commercial, advertising, or otherwise, on or in connection with
the Site or the promotion thereof, to prepare derivative works of, or in-
corporate into other works, such User Content, and to grant and author-
ize sublicenses of the foregoing." ECF 161-1 at 5, ER 21. Though the
current language may be more concise, this original language is indica-
tive of how Facebook envisioned itself as a licensee of its users' publicity
rights. At least one named minor plaintiff purportedly consented to the-
se expansive terms. *See* Solanski Decl. ¶ 4, ECF 161, ER 14.

18

Page."). This is plainly a delegation of power, and therefore falls squarely within the plain meaning of § 6701(a).

Apart from the unsupported and atextual theory that "give a delegation of power" only means "appoint an agent," the district court provided no reasoned explanation that Plaintiffs' purported authorization of Facebook to use their names and pictures was not "a delegation of power." Clearly, the SRR is a purported delegation of power to Facebook and, with respect to minors like Plaintiffs, it is just as clearly void. The district court's unduly narrow reading of § 6701(a) should be reversed.

### B. The District Court Also Violated A Host of Well-Established Maxims of Statutory Construction.

The district court compounded its error of attempting to "construe" an unambiguous statute by misapplying rules of statutory construction while ignoring others. When interpreting statutory language, a court's ultimate task is to discern the Legislature's intent, and " 'rules of grammar and canons of construction are but tools, "guides to help courts determine likely legislative intent." ' " *California Redevelopment Assn. v. Matosantos*, 53 Cal. 4th 231, 269 (2011) (quoting *Burris v. Superior Court*, 34 Cal. 4th 1012, 1017–1018 (2005)).

[M]axims of statutory construction are not immu-

> table principles that dictate how a statute is to be
> interpreted. They exist simply to aid in the inter-
> pretation of a statute and will not be applied
> when doing so would run counter to a clear legis-
> lative intent or the plain language of the statute.

*Bisno v. Kahn*, 225 Cal. App. 4th 1087, 1104 (2014), as modified on de-

nial of reh'g (May 23, 2014), review filed (June 5, 2014) (citation omit-

ted).

Insisting that a literal interpretation of § 6701(a) would somehow

constitute an impermissibly "broad" construction of the statute and

"turn[] statutory construction on its head," (Order at 5, ER 9), the dis-

trict court concluded that the statute "must be construed narrowly," as

an exception to the "general rule" (of § 6700) that minors generally have

the power to enter into contracts.[6] *Id*. The court then narrowly inter-

preted "a delegation of power" to require an act "tantamount" to the ap-

pointment of an agent or "delegating … any power to be exercised on

behalf of" the minors. *Id*. at 6. In doing so, the court committed multiple

errors.

---

[6] While § 6700 might seem on its face to set forth a "general rule" that
"a minor may make a contract in the same manner as an adult," in fact
— and contrary to the district court's reasoning — "[i]t has long been
the rule in California that a minor has limited capacity to enter into
contracts," *Pearson v. Superior Court*, 202 Cal. App. 4th 1333, 1337
(2012), as discussed later in the text.

Without considering any other potentially applicable maxims of statutory construction, the court improperly treated the single maxim it *did* consider as an "immutable principle[] that dictate[s] how [the] statute is to be interpreted." *Bisno*, 225 Cal. App. 4th at 1104. Moreover, in applying a rule that an exception to a "general rule" must be construed "narrowly," the district court ignored another rule: that courts may not "read into the statute that which the Legislature has excluded, or *read out that which it has included.*'" *Quarry v. Doe I*, 53 Cal. 4th 945, 988, (2012) (quoting *Davis*) (emphasis added).

Moreover, even if a strict construction of § 6701(a) had been warranted, "the rule of strict construction does not require that the narrowest possible meaning be given." *Cedars of Lebanon Hosp. v. Los Angeles Cnty.*, 35 Cal. 2d 729, 735 (1950); *accord* 3 SUTHERLAND STATUTORY CONSTRUCTION § 58:2 (7th ed.) ("strict construction of statutes … does not require that the words of a statute be given their narrowest possible meaning"). "[S]trict construction must still be a reasonable construction." *Cedars*, 35 Cal. 2d at 735 (quoting *State ex rel. Spillers v. Johnston*, 113 S.W. 1083, 1084 (Mo. 1908)).

A rule of strict construction does "not mean[] that the statute shall be

21

stintingly or even narrowly construed, but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used."3 SUTHERLAND STATUTORY CONSTRUC-TION § 58:2 (7th ed.) (quoting *Harrison v. Guilford Cnty.*, 12 S.E.2d 269, 272 (N.C. 1940)).

> "One who contends that a provision of an act must not be applied according to the natural or customary purport of its language must show either that some other section of the act expands or restricts its meaning, that the provision itself is repugnant to the general purview of the act, or that the act considered in pari materia with other acts, or with the legislative history of the subject matter, imports a different meaning."

*Leroy T. v. Workmen's Comp. Appeals Bd.*, 12 Cal. 3d 434, 438 (1974) (quoting 2A SANDS, *Statutes and Statutory Construction* (4th ed. of SUTHERLAND, *Statutory Construction*, 1973) § 46.01, p. 49). Neither Facebook nor the district court even attempted any such showing to justify their restrictive interpretation of § 6701(a).

Facebook's entire "exegesis" of the statutory language consisted of its bare assertion that "the proscription of 'delegation[s] of power' only prevents minors from appointing or acting through an agent." (ECF No. 167 at 12) and its insistence that "[c]ases construing § 6701(a) and its

predecessor statute, Civil Code § 33, demonstrate that the proscription against a minor's contractual 'delegation of power' relates to a minor's ability to appoint an agent." (ECF No. 159 at 24).

The district court did not offer much more analysis. The court even acknowledged that "Facebook may obtain 'powers' under the SRRs to utilize the names and pictures in certain ways," (Order at 6, ER 10), but the court made no attempt to explain why Facebook's acquisition of "powers" from minors is not a prohibited "delegation of power" within the meaning of the statute. Instead the court wrote that "Plaintiffs have not shown how it would be a *delegation* of power within the meaning of the statute." *Id.* (emphasis in original). The court's emphasis on the word "delegation" suggests that it found some significance in the word, but the court offered no hint what that significance might be.

The district court did make clear, however, its view that the minors' delegation of authority to Facebook to use their names and likenesses "is no different from garden-variety rights a contracting party may obtain in a wide variety of contractual settings," and therefore not a violation of § 6701(a). That remark only serves to underscore just how utterly wide of the mark the court's understanding of § 6701(a) really was. A

23

contract between an adult and a minor is *completely* different from other "contractual settings," due to "the policy of the law to discourage adults from contracting with infants." *Flittner v. Equitable Life Assur. Soc. of U.S.*, 30 Cal. App. 209, 216 (1916) ("The law in its wisdom shields minors from their lack of judgment and experience"). That policy serves "to protect infants, not only from others, but also from themselves. It is a settled principle of the law that one deals with infants at his peril." *Pollock v. Indus. Acc. Comm'n*, 5 Cal. 2d 205, 210-11 (1936).

This policy was the genesis of what is now Family Code § 6701— strict provisions proposed by the New York Code Commission in the late 1800s that made certain contracts requiring the maturity and understanding of an adult *absolutely void* as to minors instead of merely *voidable. Grupa v. Chapman*, 153 N.W. 929, 930 (S.D. 1915). Such restrictions were considered a "rather severe arraignment of legislative action" and were peculiar to California and South Dakota, while the "general law" continued the practice of making such contracts merely voidable. *Id.* at 929-930. The adoption of such restrictions on a minor's right to contract in these areas demonstrates the California legislature's clear intent to provide heightened protections to minors.

Thus, just because there are a host of valid contractual rights that have become commonplace in contracts among adults does not mean they are necessarily valid if entered into with a minor. "Garden variety" contractual rights among adults that constitute a delegation of power are void *ab initio* when a minor purports to delegate such rights. Despite the superficially broad authority § 6700 grants a minor to enter into contracts, sections 6701 and 6710 (as well as other statutes expressly referenced in § 6700) impose substantial exceptions and qualifications that drastically burden a minor's capacity to contract.

> Most counterparties are wary of entering into contracts for goods or services with adolescents because children can disavow their obligations at a later point. Indeed, businesses usually require that an adult, typically the parent or legal guardian, co-sign any contract entered into by a minor. The functional result is that adolescents are limited significantly in their ability to engage in many of the day-to-day activities of life that adults take for granted, but are in fact based on contractual agreements.

Jonathan Todres, *Maturity*, 48 HOUS. L. REV. 1107, 1126–27 (2012).

Those *de jure* and *de facto*, real-world restrictions on the capacity of minors to contract undermine the district court's "basic presumption … that minors *do* have the power to enter into binding contracts." (Order

at 5, ER 9). They also explain why, in the view of California courts, "[i]t has long been the rule in California that a minor has limited capacity to enter into contracts," *Pearson*, 202 Cal. App. 4th at 1337, despite the ostensibly broader rule of § 6700.

The remedial nature of § 6701 also brings to mind yet another rule of construction that the district court ignored: the rule requiring courts to "liberally construe remedial statutes in favor of their protective purpose." *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 532 (2011). Remedial statutes are "civil statutes for the protection of the public," "intended to protect the public," and they are construed "broadly to accomplish that protective purpose." *People ex rel. Lungren v. Superior Court*, 14 Cal. 4th 294, 313-14 (1996).

One last indicator of the district court's error is that even though the original impetus for the California General Assembly's enactment of § 33 was to prohibit minors' appointments of agents, California state courts have never interpreted "a delegation of power" to be *limited* to a minor's attempted appointment of an agent. Neither Facebook nor the district court cited any California decisions that support of their restrictive interpretation. Indeed, one of the cases on which Facebook demon-

26

strates there is no such limitation on § 6701(a)'s plain language.

In *Morgan v. Morgan*, 220 Cal. App. 2d 665, 674 (1963), the court held that a contract was void under § 6701(a) even though it did *not* involve a minor's attempt to appoint an agent. There, the minor purported to authorize someone to endorse his checks. "Appellant's authorization to Herdan to endorse his name on the checks was a delegation of power and, as such, void under the provisions of section 33 of the Civil Code." *Id.* The only other case the district court cited that mentions § 6701(a) was *Hakes Inv. Co. v. Lyons*, 166 Cal. 557 (1913), and it did not involve any interpretation or application of § 6701(a). *Id.* at 561 (14-year-old's deed purporting to convey interest in real property was "void from the beginning, it conveyed no interest in the land whatever").

If the California General Assembly had merely meant to prohibit minors from "appointing or acting through an agent," it could have said so and undoubtedly *would* have said so. It did not. The legislature prohibited minors from "Giv[ing] a delegation of power," which is exactly what Facebook's SRR purports to do: delegate to Facebook the right to use minors' names and likenesses for Facebook's own commercial, advertising purposes. That "delegation of power" in the SRR is absolutely void,

27

and this Court should reverse the district court's contrary ruling.

## II. SECTION 6701(c) PROHIBITS A MINOR FROM MAKING A CONTRACT RELATING TO THE FUTURE USE OF HIS NAME OR LIKENESS

Section 6701(c) provides that "[a] minor cannot … [m]ake a contract relating to any personal property not in the immediate possession or control of the minor." Stated positively, the statute "authorizes minors, even under the age of eighteen years, to make contracts relating to personal property which is in their immediate possession or control." *Ridley v. Young*, 64 Cal. App. 2d 503, 514 (1944). Thus, the question is whether the right to use one's name and likeness is personal property within a person's immediate possession or control.

The phrase "immediate possession or control" suggests that the legislature intended to permit minors to enter into contracts only for *tangible* personal property because intangible property, referred to at that time as incorporeal property, was not deemed to be subject to possession or control, unlike corporeal property.

> Incorporeal property, being incapable of manual delivery, cannot be pledged without a written transfer of the title. Debts, negotiable instruments, stocks in incorporated companies, and choses in action generally are pledged in that mode. *Such transfer of the title performs the*

28

> *same office that the delivery of possession does in*
> *case of a pledge of corporeal property*. The trans-
> fer of the title, like the delivery of possession,
> constitutes the evidence of the pledgee's right of
> property in the thing pledged.

*Brewster v. Hartley*, 37 Cal. 15, 25 (1869) (emphasis added). "Posses-

sion applies properly only to corporeal things, movable and immova-

ble's. The possession of incorporeal rights, such as servitdues and other

rights of that nature, is only a quasi-possession ...." 2 BOUVIER'S LAW

DICTIONARY 350 (12th ed. 1868) ("possession").

In California law, "[p]ossession may be actual or constructive. Actual

possession means the object is in the defendant's immediate possession

or control. A defendant has actual possession when he himself has the

[object]." *In re Daniel G.*, 120 Cal. App. 4th 824, 831 (2004). "Construc-

tive possession means the object is not in the defendant's physical pos-

session, but the defendant knowingly exercises control or the right to

control the object." *Id.* A similar distinction was recognized in law at the

time § 6701(c) was enacted. "*Actual* possession exists where the thing is

in the immediate occupancy of the party. Constructive possession is

that which exists in contemplation of law, without actual personal occu-

pation." 2 BOUVIER'S LAW DICTIONARY 349 (12th ed. 1868) ("possession").

Likewise, the tort of conversion "traditionally required a taking of tangible property, and thus was not available to remedy the misappropriation of something like a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 (2010), *overruled on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) (citing 5 Witkin, *Summary of Cal. Law* (10th ed. 2005) Torts, § 702, at 1025). Against this backdrop, the statutory language strongly suggests that a minor can only enter into a contract related to tangible personal property because of the requirement that such property be in the minor's "immediate possession or control."

In the only two cases on point, California courts have interpreted § 6701(c) to prohibit minors from making a contract with respect to incorporeal, intangible rights. In *Morgan v. Morgan*, 220 Cal. App. 2d 665 (1963), a minor purported to make an assignment of his wages.[7] *Id.* The court held that the minor's "right to wages was not personal property in his possession and his direction to pay them to another would be an assignment of a chose in action and void." *Id.* at 675. More recently, in

---

[7] As discussed earlier, *Morgan* also involved a minor's purported authorization of third party to endorse his checks, which the court held to be void under § 6701(a). 220 Cal. App. 2d at 674–75.

*Sisco v. Cosgrove*, 51 Cal. App. 4th 1302, 1307 (1996), the court held even more broadly that § 6701(c)'s ban means "a minor cannot contract with respect to a future interest."

Construing § 6701(c) as permitting a minor to enter into a contract only relating to tangible property is not only more faithful to the statute's language, but also to its remedial purpose of protecting minors. Just as minors would be more susceptible to entering into bad deals for property not in their immediate possession than property in their possession with which they would be required to immediately part, minors are also more likely to undervalue intangible property interests and enter into bad deals for those as well.

For all these reasons, Facebook's attempt to contract with minors for the use of their names and likenesses violates § 6701(c). The right to the use of someone's name and likeness is an intangible property right and therefore "not in the immediate possession or control" of its owner within the meaning of the statute. Moreover, when a child purports to give Facebook "permission to use [his or her] name and profile picture," that child is purporting to give Facebook a *future right* to use his or her name and likeness, which § 6701(c) forbids. *Sisco*, 51 Cal. App. 4th at

31

1307.

The district court agreed that § 6701(c)'s "in the immediate possession" language connotes tangible personal property. (Order at 6, ER 10). The court seems to have agreed that Plaintiffs' right to control their names and likenesses is an intangible property right. Taken together, these conclusions should have led the court to conclude that Facebook's putative contracts with minors for the use of their names and likenesses are void under § 6701(c) because they are not contracts for tangible personal property in the minors' immediate possession or control — the only contracts for personal property that § 6701(c) doesn't ban.

Instead, the court concluded "that the section is primarily intended to address *tangible* personal property" and "because subdivision (c) is directed at tangible property (as plaintiffs admit), it only renders void certain contracts relating to such property." *Id.* That is a fundamental misreading of the statute. Section 6701(c) provides that "[a] minor cannot … [m]ake a contract relating to any personal property not in the immediate possession or control of the minor." The section is not primarily intended to address tangible property. Quite the contrary, it is *exclusively* intended to void *every* "contract relating to *any* personal

property not in the immediate possession or control of the minor." The district court's understanding of § 6701(c) is plainly wrong. This Court should reverse.

## III. SECTION 6710 ALLOWS A MINOR TO VOID A CONTRACT WITHOUT RETURNING ANY BENEFIT.

Even if the Court were to find § 6701 does not void Facebook's SRR, the district court's dismissal of Plaintiffs' declaratory judgment count must still be reversed. The Family Code allows Plaintiffs to void most contracts during their minority, and the SRR is no exception. Section 6710 provides that "a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards …."

In its order of dismissal, even the district court recognized that "this section would almost certainly allow plaintiffs to disaffirm the SRRs …." (Order at 7, ER 11). But the district court then determined that Plaintiffs "have never plainly expressed an intent to [disaffirm the SRR], and they do not dispute that they continued to use their Facebook accounts long after this action was filed." *Id.*

"A contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect." *Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007)

33

(quoting *Spencer v. Collins*, 156 Cal. 298, 303 (1909)). "The filing of an action is sufficient." *Celli v. Sports Car Club of Am., Inc.*, 29 Cal. App. 3d 511, 517 (1972).

Plaintiffs filed this lawsuit seeking a declaration that Facebook's SRR was void. Under *Celli*, Plaintiffs adequately expressed their intent to disaffirm. In recognition of that fact, Facebook eventually cancelled Plaintiffs' accounts. (ECF No. 167 at 15 n.10. "Effective December 3, 2013, Facebook disabled Plaintiffs' accounts."). Moreover, Plaintiffs' continued use of Facebook's website after filing the lawsuit is legally irrelevant. Section 6710 allows minors to retain the benefits of contracts they disaffirm. *Burnand v. Irigoyen*, 30 Cal. 2d 861, 865-66 (1947) (en banc) ("Upon disaffirmance the minor is entitled to recover all benefits paid under the contract, and, as noted, where the minor was under 18, restoration of benefits received is not required."). This is the reason California courts have repeatedly held that "[o]ne deals with infants at his peril." *Burnand*, 30 Cal. 2d at 866.

It is a federal court's duty "to ascertain and apply the existing California law, not to predict that California may change its law and then to apply [its] notion of what that change might or ought to be." *Cabrera v.*

34

*City of Huntington Park*, 159 F.3d 374, 378 (9th Cir. 1998). Count I seeks a declaration that Facebook's SRR with respect to minors is void. Plaintiffs disaffirmed the SRR by filing this lawsuit seeking a declaration that it was void. The district court erred when it ignored the holdings of *Burnand* and *Celli* and dismissed this claim.

## CONCLUSION

The decision in this case will not only determine whether adults can commercially exploit the names and likenesses of minors by implied agreements to boilerplate terms, but whether they can do so by taking advantage of the simplicity with which a child can purportedly enter into a contract in the online era: by the mere click of a mouse button. As the one court has observed, "'a computer lets you make more mistakes faster than any invention in human history—with the possible exceptions of handguns and tequila.'" *Vince v. Rock Cnty., Wis.*, 604 F.3d 391, 393 (7th Cir. 2010) (*quoting United States v. Carelock*, 459 F.3d 437, 443 (3d Cir. 2006)).

While "[i]nformation privacy and security risks exist for all users[,] [c]hildren are a particularly vulnerable group of online users … because they often lack the awareness and the capacity to foresee possible con-

sequences (e.g. disclosure of personal information online can potentially make it universally accessible)." *The Protection of Children Online*, OR-GANISATION FOR ECONOMIC CO-OPERATION AND DEVELOPMENT 34 (Feb. 12, 2012) http://www.oecd.org/sti/ieconomy/childrenonline_with_cover.pdf. "[C]hildren tend to skip privacy statements of online services … and they readily agree to the use of their data in order to get access to desired websites." *Id.* at 35. Children also "tend to underestimate the commercial interest of their personal data." *Id.*

California's longstanding laws and policies protecting children apply to contracts purporting to authorize the use of minors' names and like-nesses. That protection is all the more important in light of the unique challenges of the digital age. *See Kremen v. Cohen*, 325 F.3d 1035, 1040 (9th Cir. 2003) (citing "the growing ubiquity and importance of the Internet").

The district court improperly construed these laws to the detriment of minors. This Court should reverse.

Dated: August 6, 2014      /s Aaron M. Zigler
                           Aaron M. Zigler
                           **KOREIN TILLERY LLC**
                           One U.S. Bank Plaza
                           505 N. 7th Street, Suite 3600
                           St. Louis, Missouri 63101-1625

Tel: (314) 241-4844
Fax: (314) 241-3525
*Attorneys for the Plaintiffs-Appellants*

## STATEMENT OF RELATED CASES

The following appeals are related to this appeal: *Fraley v. Facebook*, 13-16819, 13-16918, 13-16919, 13-16929, 13-16936, 13-17028, 13-17097.

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7)

The undersigned, counsel of record for the Appellants, furnishes the following in compliance with F.R.A.P Rules 28.1(e)(2(B) and 32(a)(7):

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)((2)(B) and 32(a)(7)(B) because it contains 7,553 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). Rule 32(a)(7)(B) sets a limit of 14,000 words for the appellant's principal brief.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2008 in fourteen-point Century font in both the body and the footnotes.


Dated: August 6, 2014         s/ Aaron M. Zigler
                              Aaron M. Zigler
                              **KOREIN TILLERY LLC**
                              One U.S. Bank Plaza
                              505 N. 7th Street, Suite 3600
                              St. Louis, Missouri 63101-1625
                              Tel: (314) 241-4844
                              Fax: (314) 241-3525
                              *Attorneys for the Plaintiffs-Appellants*

## PROOF OF SERVICE

I hereby certify that on August 6, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: August 6, 2014                   s/ Aaron M. Zigler
                                        Aaron M. Zigler
                                        **KOREIN TILLERY LLC**
                                        One U.S. Bank Plaza
                                        505 N. 7th Street, Suite 3600
                                        St. Louis, Missouri 63101-1625
                                        Tel: (314) 241-4844
                                        Fax: (314) 241-3525
                                        *Attorneys for the Plaintiffs-Appellants*